**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RED BULL GMBH, an Austrian company, and RED BULL NORTH AMERICA, INC., a California corporation, | ) ) ) ) |
| Plaintiffs, | ) **COMPLAINT** ) |
| | ) |
| vs. | ) ) |
| | ) Civil Action No. _____ |
| GALE WHOLESALE, LLC, a New York limited liability company, and JAKE SCHMIGELSKI, a New York citizen, and DOES 1-10, | ) ) ) ) ) |
| Defendants. | ) |

Plaintiffs, Red Bull GMBH and Red Bull North America, Inc., by and through their attorneys Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP, and Anthony DiPaolo, P.C., for their complaint against the defendants allege as follows:

## NATURE OF ACTION

This is an action for trademark infringement, unfair competition, and dilution in violation of federal and New York state law.

## PARTIES

1.      Plaintiff Red Bull GmbH is an Austrian company with its principal place of business at Am Brunnen 1, 5330 Fuschl am See, Austria.  Plaintiff Red Bull North America, Inc. is a California corporation with its principal place of business at 1740 Stewart Street, Santa Monica, CA 90404 and the wholly owned subsidiary of Red Bull GmbH.  Red Bull GmbH and Red Bull North America, Inc. are collectively referred to herein as "Red Bull."

2.      Defendant Gale Wholesale, LLC ("Gale") is a New York limited liability company with a registered corporate address at 404 E. 79th Street #20A, New York, NY 10075. On information and belief, defendant Jake Schmigelski is an individual residing in the state of New York and is the owner and general manager of Gale.  On information and belief, Does 1-10 (collectively, the "Doe Defendants") are individuals and business entities who have participated or assisted in the conduct alleged herein or are otherwise responsible therefor.  The identity of these Doe Defendants presently is not and cannot be known to Red Bull, but these persons and/or entities will be added as named defendants to this action as and when they are identified.  Unless otherwise indicated, Gale, Mr. Schmigelski, and the Doe Defendants are referred to collectively herein as "Defendants."

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction because (1) this is an action arising under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051, *et seq.* (the Lanham Act), jurisdiction being conferred in accordance with 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b); and (2) this is a civil action between citizens of New York on one side and citizens of Austria and California on the other side, in which the value of the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, jurisdiction being conferred in accordance with 28 U.S.C. § 1332.  Jurisdiction for the claims made under New York state law is conferred in accordance with the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

4.      Venue is proper in this district under 28 U.S.C. § 1391(b) because Gale resides in this district and both Defendants reside in the state of New York, and because a substantial part of the events giving rise to the claims alleged herein occurred in this district.  Venue also is proper

under 28 U.S.C. § 1391(c) because Gale is subject to this Court's personal jurisdiction for purposes of this case.

## FACTS

### RED BULL'S DOMESTIC PRODUCTS AND FAMOUS TRADEMARKS

5.       Red Bull is engaged in the manufacture, distribution, sale and marketing of various goods and services, including its famous Red Bull Energy Drink and other beverage products (collectively, "Red Bull Products"), throughout the United States and in 171 other countries around the world.

6.       Since entering the United States market in 1996, the Red Bull Energy Drink has achieved enormous success through extensive marketing and promotional efforts, including in New York and in this district.  Red Bull has been the leading product in its industry for over 20 years.  From 2005 to 2017, Red Bull sold over 16.7 billion units of Red Bull Energy Drink in the United States – over 1.5 billion units in 2017 alone.

7.       Since long prior to Defendants' acts complained of herein, Red Bull has made continuous use of the trademarks RED BULL, RED BULL & Double Bull Design,

, RED BULL ENERGY DRINK & Blue/Silver Quadrant Design,

, VITALIZES BODY & MIND, and variations of these marks (collectively, "RED BULL Marks") on and in connection with its Red Bull Products.

-3-

8.     Red Bull owns, among many others, the following federal trademark registrations issued by the United States Patent and Trademark Office for the RED BULL Marks used on and in connection with the Red Bull Energy Drink and other Red Bull Products:

| MARK | REG. NO. | REG. DATE | RELEVANT GOODS |
|---|---|---|---|
| RED BULL | 3,092,197 | May 16, 2006 | Non-alcoholic beverages, namely energy drinks and hypertonic drinks in Class 32 |
|  | 2,946,045 | May 3, 2005 | Non-alcoholic beverages, namely energy drinks and hypertonic drinks in Class 32 |
|  | 3,197,810 | January 16, 2007 | Soft drinks and sport drinks in Class 32 |
| VITALIZES BODY AND MIND | 3,440,484 | June 3, 2008 | Non-alcoholic beverages, namely, sports drinks, energy drinks and soft drinks in Class 32 |
|  | 3,479,607 | August 05, 2008 | Non-alcoholic beverages, namely, sports drinks, energy drinks and soft drinks in Class 32 |

9.      These registrations are valid, subsisting and incontestable and constitute conclusive evidence of Red Bull's exclusive right to use the RED BULL Marks for the goods specified in the registrations.  15 U.S.C. §§ 1065, 1115(b).

10.      Red Bull advertises the Red Bull Products featuring the RED BULL Marks in the United States through various means, including electronic media (e.g., "Red Bull TV" – a multi-platform digital video service that features programming from the world of Red Bull on an extensive selection of sports, music and lifestyle entertainment events), print media (e.g., Red Bull's "The Red Bulletin" magazine), and other promotional and point of sale materials (e.g., billboards, in-store displays, sampling cars and Red Bull–branded coolers).  In addition, Red Bull promotes the RED BULL Marks in connection with the sponsorship of numerous athletes, ownership of sports teams (including the New York Red Bulls soccer team) and organization of numerous events.  Hundreds of thousands of spectators have witnessed Red Bull's events in the United States, further strengthening Red Bull's brand recognition and building up the goodwill in the RED BULL Marks.  In addition, Red Bull has over 49 million fans/"likes" on Facebook, over 2.1 million followers on Twitter, 8.3 million followers on Instagram and over 6.1 million subscribers on its YouTube channel.  From 2005 to 2017, Red Bull spent billions of dollars on advertising and promoting the Red Bull Products and the RED BULL Marks in the United States.

11.      As a result of Red Bull's extensive sales, promotion, and advertising of the Red Bull Products, the RED BULL Marks have become famous among the general consuming public of the United States, and represent an extraordinarily valuable goodwill to Red Bull.  In fact, the RED BULL Marks are consistently ranked in the top 100 most valuable brands worldwide.

### GRAY MARKET RED BULL ENERGY DRINK

12.     In addition to its activities in the United States, Red Bull and its related entities are engaged in the manufacture, distribution, sale and marketing of energy drinks bearing the RED BULL Marks that are only authorized for sale in specific foreign countries or regions ("Gray Market Red Bull Energy Drink").

13.     Gray Market Red Bull Energy Drink is tailored to specific geographic regions or countries to reflect differences in terms of language, government regulations, and units of measurement, among other things.

14.     Red Bull and its related entities appoint distributors or agents in the various geographic regions or countries to maintain the quality associated with products bearing the RED BULL Marks within each particular region or country.

15.     Gray Market Red Bull Energy Drink is not authorized or intended for exportation out of its intended region or country, or for importation into, sale, marketing or distribution in the United States.

16.     Indeed, the International Trade Commission has issued a General Exclusion Order that bars the importation into the United States of all Gray Market Red Bull Energy Drink, irrespective of the identity of the importer.  *See In the Matter of Certain Energy Drink Products*, Inv. No. 337-TA-678 (CIT Oct. 1, 2010).

17.     Additionally, Red Bull has successfully taken action against the importation and sale of Gray Market Red Bull Energy Drink in the past.  *See, e.g., Red Bull GmbH et. al. v. Kassir Co. et. al.*, 1:06-cv-2301-CC (N.D. Ga. Feb. 11, 2009) (entering permanent injunction and $2.1 million damages award).

**DEFENDANTS' SALE OF GRAY MARKET RED BULL ENERGY DRINK**

18.     Defendants import, sell, promote, distribute and authorize, or otherwise contribute to the importation, sale, promotion and/or distribution by others of Gray Market Red Bull Energy Drink that is intended for sale in South Africa and not authorized for sale in the United States.

19.     The Gray Market Red Bull Energy Drink intended for sale in South Africa, which Defendants sell within the United States, is materially different in many respects from the product authorized for sale in the United States.  For example, the South African Red Bull Energy Drink:

        a.      Does not travel through authorized supply chains and is therefore not subject to Red Bull's quality control standards such as transporting the Red Bull Products in climate controlled containers or in a manner that ensures the cans do not get dents and nicks which may result in a can that looks to be an inferior product and may also result in leakage or a loss of carbonation;

        b.      Does not contain the adequate UPC Code to track the product in case of a recall;

        c.      Presents nutrition information in a manner that does not comply with FDA requirements;

        d.      Is missing beverage container deposit information required by several U.S. states;

        e.      Includes variation on English spelling that is different from American English, such as "colour" versus "color", which American consumers are unfamiliar with;

f.      Presents the expiration date in a manner U.S. consumers are not familiar

with, i.e., DD-MM-YYYY, and which may not allow the consumer to

determine the correct expiration date of the product;

g.      Presents volume and nutrition information using the metric system

instead of the standard system of measurement that U.S. consumers

recognize; and

h.      Directs consumers to Red Bull's South African website instead of its

American website and is missing the United States toll-free number for

consumers to contact Red Bull in case of questions or concerns.

**FIRST CLAIM FOR RELIEF**
**(TRADEMARK INFRINGEMENT IN VIOLATION OF**
**SECTION 32 OF THE LANHAM ACT)**

20.     Red Bull re-alleges paragraphs 1 through 19 as if fully set forth herein.

21.     Without Red Bull's consent, Defendants have used the RED BULL Marks in

commerce in connection with the sale, offering for sale, distribution, and/or advertising of Gray

Market Red Bull Energy Drink.  These acts have caused or are likely to cause confusion, mistake

or deception as to the source of origin, sponsorship or approval of the Gray Market Red Bull

Energy Drink Defendants sell in that purchasers and others are likely to believe Red Bull

authorizes and controls Defendants' sale of Gray Market Red Bull Energy Drink in the United

States or that Defendants are associated with or related to Red Bull.

22.     Defendants' acts are likely to injure and, on information and belief, have injured

Red Bull's image and reputation with consumers in the United States by creating confusion

about, and dissatisfaction with, the Red Bull Energy Drink.

-8-

23.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's business reputation and relations with retail accounts in the United States by causing customer dissatisfaction, a diminution in value of the goodwill associated with the RED BULL Marks, and a loss of Red Bull's sales and market share to its competition.

24.     On information and belief, Defendants' sale, offering for sale, distribution, and/or advertising of Gray Market Red Bull Energy Drink in the United States have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the RED BULL Marks and with a bad faith intent to cause confusion and trade on Red Bull's goodwill.

25.     Defendants' acts constitute an infringement of Red Bull's trademark rights in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

26.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law.  Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling any Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in South Africa, as well as to Defendants' profits, Red Bull's reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## SECOND CLAIM FOR RELIEF
### (UNFAIR COMPETITION IN VIOLATION OF
### SECTION 43(a) OF THE LANHAM ACT)

27.     Red Bull re-alleges paragraphs 1–7 and 9–19 as if fully set forth herein.

28.     Without Red Bull's consent, Defendants have used the RED BULL Marks in commerce in connection with the sale, offering for sale, distribution, and/or advertising of Gray

Market Red Bull Energy Drink.  These acts have caused or are likely to cause confusion, mistake or deception as to the source of origin, sponsorship or approval of the Gray Market Red Bull Energy Drink Defendants sell in that purchasers and others are likely to believe Red Bull authorizes and controls Defendants' sale of Gray Market Red Bull Energy Drink in the United States or that Defendants are associated with or related to Red Bull.

29.      Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's image and reputation with consumers in the United States by creating confusion about, and dissatisfaction with, the Red Bull Energy Drink.

30.      Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's business reputation and relations with retail accounts in the United States by causing customer dissatisfaction, a diminution in value of the goodwill associated with the RED BULL Marks, and a loss of Red Bull's sales and market share to its competition.

31.      On information and belief, Defendants' sale, offering for sale, distribution, and/or advertising of Gray Market Red Bull Energy Drink in the United States have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the RED BULL Marks and with a bad faith intent to cause confusion and trade on Red Bull's goodwill.

32.      Defendants' acts constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

33.      Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law.  Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling any Gray Market Red Bull Energy Drink, including, but not

limited to, products intended for sale in South Africa, as well as to Defendants' profits, Red

Bull's reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and

1117.

**THIRD CLAIM FOR RELIEF
(DILUTION IN VIOLATION OF
SECTION 43(c) OF THE LANHAM ACT)**

34.    Red Bull re-alleges paragraphs 1–7 and 9–19 as if fully set forth herein.

35.    The RED BULL Marks are famous and are widely recognized by the general

consuming public of the United States as a designation of source of the Red Bull Products,

including the Red Bull Energy Drink.

36.    Defendants' acts as described herein began after the RED BULL Marks became

famous and are likely to and have tarnished Red Bull's valuable business reputation and

goodwill and are likely to and have blurred the distinctiveness of the famous RED BULL Marks.

37.    Defendants' acts are likely to cause and have caused dilution by tarnishment and

blurring of the famous RED BULL Marks in violation of Section 43(c) of the Lanham Act, 15

U.S.C. § 1125(c).

38.    On information and belief, Defendants' sale, offering for sale, distribution, and/or

advertising of Gray Market Red Bull Energy Drink in the United States have been committed

deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the

Red Bull Marks and with a bad faith intent to cause dilution of the Red Bull marks.

39.    Defendants' acts greatly and irreparably damage Red Bull and will continue to so

damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate

remedy at law.  If not restrained, Defendants will have unfairly derived and will continue to

unfairly derive income, profits, and business opportunities as a result of their acts of dilution.

Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling any Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in South Africa, as well as to Defendants' profits, Red Bull's reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

**FOURTH CLAIM FOR RELIEF**
**(DILUTION IN VIOLATION OF**
**NEW YORK GENERAL BUSINESS LAW §360-l)**

40.     Red Bull re-alleges paragraphs 1–7 and 9–19 as if fully set forth herein.

41.     The RED BULL Marks are famous and are widely recognized by the general consuming public of the United States and of this district as a designation of source of the Red Bull Products, including the Red Bull Energy Drink.

42.     Defendants' acts as described herein began after the Red Bull Marks became famous and have diluted the distinctive quality of the famous RED BULL Marks in violation of N.Y. Gen. Bus. Law § 360-l.

43.     On information and belief, Defendants' sale, offering for sale, distribution, and/or advertising of Gray Market Red Bull Energy Drink in the United States have been committed deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the famous RED BULL Marks and with a bad faith intent to cause dilution of the RED BULL Marks.

44.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law.  If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of dilution. Accordingly, Red Bull is entitled to an order enjoining and restraining Defendants from selling

any Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in South Africa.

**FIFTH CLAIM FOR RELIEF**
**(UNFAIR COMPETITION IN VIOLATION**
**OF NEW YORK COMMON LAW)**

45.     Red Bull re-alleges paragraphs 1–7 and 9–19 as if fully set forth herein.

46.     Without Red Bull's consent, Defendants have appropriated for their own use Red Bull's RED BULL Marks.

47.     Defendants have used the RED BULL Marks in commerce in connection with the sale, offering for sale, distribution, and/or advertising of Gray Market Red Bull Energy Drink. These acts have caused or are likely to cause confusion, mistake or deception as to the source of origin, sponsorship or approval of the Gray Market Red Bull Energy Drink Defendants sell in that purchasers and others are likely to believe Red Bull authorizes and controls Defendants' sale of Gray Market Red Bull Energy Drink in the United States or that Defendants are associated with or related to Red Bull.

48.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's image and reputation with consumers in the United States by creating confusion about, and dissatisfaction with, the Red Bull Energy Drink.

49.     Defendants' acts are likely to injure and, on information and belief, have injured Red Bull's business reputation and relations with retail accounts in the United States by causing customer dissatisfaction, a diminution in value of the goodwill associated with the RED BULL Marks, and a loss of Red Bull's sales and market share to its competition.

50.     On information and belief, Defendants' sale, offering for sale, distribution, and/or advertising of Gray Market Red Bull Energy Drink in the United States have been committed

deliberately and willfully, with knowledge of Red Bull's exclusive rights and goodwill in the RED BULL Marks and with a bad faith intent to cause confusion and trade on Red Bull's goodwill.

51.     Defendants' acts constitute unfair competition in violation of New York common law.

52.     Defendants' acts greatly and irreparably damage Red Bull and will continue to so damage Red Bull unless restrained by this Court; wherefore, Red Bull is without an adequate remedy at law.  Accordingly, Red Bull is entitled to, among other things, an order enjoining and restraining Defendants from selling any Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in South Africa as well as to Defendants' profits and other remedies provided by New York law.

## PRAYER FOR RELIEF

WHEREFORE, Red Bull prays that:

1.     Defendants, their successors, assigns, affiliates, subsidiaries, officers, employees, agents, representatives, and all others in active concert or participation with them, be permanently enjoined from the importation into, and the dealing, marketing, sale or distribution in the United States, of Gray Market Red Bull Energy Drink, including, but not limited to, products intended for sale in South Africa;

2.     Defendants, and all others holding by, through or under them, be required, jointly and severally, to:

a.     account for and pay over to Red Bull all profits derived by Defendants from their acts of trademark infringement and unfair competition in accordance with 15 U.S.C. § 1117(a) and New York common law, and

Red Bull asks that this award be trebled in accordance with 15 U.S.C. § 1117(a);

b.      pay to Red Bull the costs of this action, together with reasonable attorneys' fees and disbursements, in accordance with 15 U.S.C. § 1117(a);

c.      destroy all of the Gray Market Red Bull Energy Drink in their possession, including packaging, and any advertising, marketing, or promotional materials that include Gray Market Red Bull Energy Drink;

d.      send a notice to any existing customers that the importation, dealing in, sale, marketing or distribution of Gray Market Red Bull Energy Drink in the United States is unlawful and that Defendants have been enjoined by a United States District Court from doing so; and

e.      file with the Court and serve on Red Bull an affidavit setting forth in detail the manner and form in which they have complied with the terms of the injunction, in accordance with 15 U.S.C. § 1116.

3.      Red Bull has such other and further relief as the Court deems just and equitable.


Dated: August 20, 2018                    Respectfully submitted,

                                          By: __/s/__ Anthony DiPaolo_____
                                          **ANTHONY DiPAOLO, P.C.**
                                          Anthony DiPaolo (AD8855)
                                          235-07 Braddock Avenue
                                          Queens Village, New York 11428
                                          (718) 989-8800
                                          tony@dipaolo-law.com

**PATTISHALL, MCAULIFFE,
NEWBURY, HILLIARD & GERALDSON LLP**
Phillip Barengolts (IL No. 6274516)
Jessica A. Ekhoff (IL No. 6308953)
200 S. Wacker Dr., Ste. 2900
Chicago, IL 60606
(312) 554-8000
pb@pattishall.com
jae@pattishall.com